1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| FRANK DELGADO, | ) | 1:09-cv-1819 GSA |
| | ) | |
| Plaintiff, | ) | **ORDER REGARDING PLAINTIFF'S** |
| | ) | **SOCIAL SECURITY COMPLAINT** |
| v. | ) | |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

## BACKGROUND

Plaintiff Frank Delgado ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability benefits pursuant to Title II of the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Gary S. Austin, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge.  (Docs. 5 & 7.)

1

## FACTS AND PRIOR PROCEEDINGS[2]

In November 2006, Plaintiff filed an application for disability benefits, alleging disability as of December 15, 1999. AR 120-122. His application was denied initially and on reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 105-114. ALJ Bert C. Hoffman, Jr. held a hearing and subsequently issued an order regarding benefits on May 29, 2008, finding Plaintiff was not disabled. AR 17-23, 47-83. Thereafter, on October 2, 2009, the Appeals Council denied review. AR 5-7.

**Hearing Testimony**

On February 21, 2008, ALJ Hoffman held a hearing in Fresno, California. Plaintiff appeared and testified. He was represented by attorney Sengthiene Bosavanh. AR 47-83.

Plaintiff was born December 10, 1946, and was sixty-one years old at the time of the hearing. He is five feet ten and one-half inches tall, weighs 180 pounds, and is right-handed. AR 50-51. He is presently divorced. AR 50. Plaintiff resides with his twenty-two year old daughter. AR 50, 74.

Plaintiff possesses a valid California driver's license, and drives two to three times per week, less than he used to. AR 51-52. He drives a 2003 GMC Sierra pickup. AR 72. Plaintiff typically drives to the grocery store, doctor's appointments, and the gym. AR 51. On average, Plaintiff goes to the gym two to three times a week, but may workout as many as five days per week if he is "stressed out." AR 51. He uses the treadmill for about a half an hour, and can walk without difficulty. AR 71.

After high school, Plaintiff earned an associates degree in industrial arts from the College of the Sequoias in Visalia. He has not received any additional education or work training beyond the associates degree. Plaintiff is able to read and write English. AR 52.

---

[2]References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

After the Dairyman's Cooperative became Land O' Lakes, Plaintiff stopped working at the warehouse in Tulare.  AR 52-53.  He "couldn't take [] the politics or the BS going on all the time."  AR 52.  He last worked in late December 2004, and is presently retired and receiving a union pension.  AR 53-54.  As a warehouseman for about twenty-five years, Plaintiff operated a forklift and loaded and unloaded supplies to and from trucks.  He typically worked the 2 p.m. to 10 p.m. shift.  AR 53-54.

When Land O' Lakes took over, the problems began.  Plaintiff explained he "basically worked by" himself and management was "trying to like maybe combine jobs" and he "didn't want to go anywhere else" because he liked working by himself.  AR 55.  He did not wish to "join the crew."  AR 55.  Once Plaintiff indicated he was going to quit, he was left alone.  AR 56.

When asked by counsel whether he could go back to work at any of his previous positions, Plaintiff replied, "[n]o, no way, no."  AR 56.  He explained that he has a hard time concentrating and is easily upset.  His daughter helps him by letting him know when he is getting "out of control or whatever."  AR 56.  He has great difficulty dealing with people, and particularly supervisors or bosses.  AR 57.

When counsel asked whether Plaintiff had any physical problems that kept him from working, he replied, "[n]o, you know, just a little bit of arthritis here and there . . .."  AR 57.  In order to treat the arthritis in his back and neck, Plaintiff takes aspirin as advised by his physician.  He does not have any problem sitting or standing.  AR 57.

Plaintiff gets "depressed sometimes" and finds it hard to leave the house.  He tends to spend a lot of time alone, and works in the yard.  His psychiatrist recommended he work out at a gym to relieve his stress, and he does so.  AR 57.  Plaintiff indicated that he had suicidal thoughts many years ago, and has not had such thoughts lately.  He had "seven, eight years of counseling" through the Veterans Administration ("VA") that helped.  AR 57.  Plaintiff becomes very irritable over little things, and it is hard for him to focus and concentrate.  AR 58.  For example, he has difficulty "filling out forms" because it "gets to" him.  AR 58.  Asked to describe his

3

1  difficulty focusing or concentrating by the ALJ, Plaintiff indicated he has to "really concentrate

2  on" the task and he forgets things.  AR 58.  He feels himself become frustrated and he works to

3  complete the task.  He stated he can complete a task, but that "it just takes [him] way too much

4  longer than it should."  AR 58.  For example, if he is filling out forms, a short form "might be all

5  right," but "page after page" becomes more difficult.  AR 59.

6      When he was asked what "things" he enjoyed, Plaintiff indicated he enjoyed his two

7  children.  He does not have any grandchildren.  AR 59.  He does not watch or participate in

8  sports, but, as previously indicated, he does go to the gym.  AR 59.  His work out partner is an

9  also retired, former coworker named John.  AR 60-61.  Plaintiff works with the free weights.  AR

10 59.  When he first started working out at the gym, he could curl seventy-five to eighty pounds,

11 for example, and now he can curl perhaps ninety to one hundred pounds. AR 59-60.  The gym is

12 not necessarily something he enjoys; he works out to release his frustration.  AR 60.

13     Plaintiff indicated that he has "a hard time like doing more than one thing."  AR 61. He

14 explained that he used to be able to barbeque and mow the lawn at the same time, or do "all

15 kinds of things at the same time."  AR 61.  Now he can do just one.  AR 61.  He suffers from

16 post traumatic stress disorder ("PTSD") as a result of a tour in Vietnam in 1966.  AR 61.  After

17 suppressing the experience, Plaintiff began suffering from nightmares, panic attacks and

18 increased anger.  AR 61-62.  The news in Iraq reminds him of Vietnam and causes him to

19 become angry.  AR 62.  The nightmares and panic attacks vary in occurrence.[3]  In other words,

20 sometimes Plaintiff will have nightmares once or twice a week, but in another week he will have

21 them four or five days in a row.  AR 62.  With regard to panic attacks, Plaintiff will wake up "all

22 sweaty" and scared.  AR 63.  When he was asked by the ALJ what he meant by "panic attack,"

23 Plaintiff agreed a panic attack is when one wakes suddenly and is startled, not knowing what has

24 happened.  AR 64.  Then Plaintiff explained that he may know the contents of the dream,

25

26

27     [3]At the request of ALJ Hoffman, Plaintiff's counsel attempted to quantify Plaintiff's nightmares separate
   from his panic attacks.  AR 62-63.

meaning he "was getting stabbed or whatever, or [he] was seeing somebody get killed." On some occasions he does not remember the dream. AR 64.

Flashbacks are also a problem. Plaintiff tried to explain a flashback, indicating that "there was a weird smell that was in Vietnam that you don't forget about, and you smell that, and it just, just makes it more, more realistic." It is on those occasions when Plaintiff has a flashback. AR 64.

On further examination by the ALJ, Plaintiff indicated that he had recently returned to Vietnam and stayed for five days following his retirement. He also visited Thailand and China and the entire trip lasted twenty days. He traveled with his son, Frank Jr. AR 65. Plaintiff's son now works in Thailand as a commercial graphic artist. AR 66.

Plaintiff indicated that he is unable to return to work now because he has difficulty sleeping and would not wake up rested. AR 67. He could not handle the changes that occurred at his previous employment, prior to quitting. AR 67. Plaintiff sleeps about five to six hours a night and wakes up often. AR 79. When he was asked why he wakes often, Plaintiff said he did not know, but that it is "just hard" to "continuously sleep." Different things will cause him to wake up, he may be restless. AR 80. He does not typically nap during the day, but does so occasionally. AR 81.

With regard to friendships and socializing with others, Plaintiff indicate he has two Vietnam veteran buddies that he gets together with "once in a while." When they get together they will "shoot the bull [and] drink a couple of beers." AR 67. They may also go to a nearby flea market or out to eat. AR 68. He does not attend church regularly any longer. AR 70. Plaintiff has seven siblings who are "around," but he never sees them. AR 72. He does remain close with his two former brothers-in-law, one of whom lives in Tulare and the other in Delano. When they get together they drink a "couple of beers" and talk. AR 73.

Plaintiff met his girlfriend Linda at a friend's house about a year ago. Typically the two hang out at Linda's house. AR 70. However, he and Linda did recently go on a cruise to the

5

Mexican Riviera.  AR 70-71.  When asked more specifically about what he and his girlfriend do together, Plaintiff indicated that while neither of them care to go to the movies, they do walk the dogs together.  AR 72-74.

Anxiety is also a problem, but Plaintiff indicated that he did not know why the anxiety would come about.  Sometimes he is just "sitting there," and he feels it.  AR 77.  Some days are worse than others.  If he becomes frustrated, sometimes it shows.  His daughter is "kind of like [his] angel," because she reminds him not to get upset or to take it easy.  AR 77-78.  She keeps him "straight" three to four times per week.  AR 78.

Although he lives with his daughter who has a computer, and who created an email address for him related to his service in Vietnam, Plaintiff rarely uses the computer and has not checked his email in "probably a month."  AR 68.

Plaintiff has had his drinking under control for "about five years."  He may have a couple of beers, two or three, but no more than that.  There is a "lot of diabetes" in his family, although he himself does not have diabetes.  AR 69.  Plaintiff cooks and watches his diet and glucose levels.  AR 72.  His daughter also does some cooking.  AR 76.

When he was asked to describe a typical day, Plaintiff indicated that he gets up in the morning, fixes himself something to eat, and keeps the house orderly.  He does his own laundry, goes to the gym and works out, and returns to the house for a shower.  Then he may fix a sandwich and watch the news.  AR 78.  Plaintiff used to enjoy photography and barbequing but he "hardly" does those things any more.  He has lost his passion.  AR 78.  He finds yard work to be hard and keeps the front yard manicured and is trying to get the back yard under control.  He used to love to do yard work, but now it is "kind of hard" and "real hard" because he becomes frustrated.  If the engine on the mower will not start, for instance, he becomes frustrated and "it's not a fun thing anymore."  AR 78-79.

With regard to prescribed medication, Plaintiff is taking Wellbutrin and indicated the dosage had recently been increased.  It does not resolve all of his symptoms, but it does help.  He

6

also takes Bupropion "for moods" as it keeps him from getting too anxious.  AR 81.  While initially Plaintiff would take the medication for a period of time and then discontinue its usage, he no longer does so.  AR 81-82.

**Medical Record**

The entire medical record was reviewed by the Court (AR 203-447), however, only those medical records relevant to the issues on appeal will be addressed below as needed in this opinion.

**ALJ's Findings**

ALJ Hoffman determined that Plaintiff has not engaged in substantial gainful activity since December 31, 2004, and has the medically determinable impairments of post-traumatic stress disorder and depression.  AR 19.  However, the ALJ determined that none of the medically determinable impairments or combination of impairments significantly limited Plaintiff's ability to perform basic work-related activities.  Thus, ALJ Hoffman found that Plaintiff does not have a severe impairment that met or exceeded one of the listing impairments and therefore is not disabled.  AR 17-23.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 401.  The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must

1    apply the proper legal standards.  *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).

2    This Court must uphold the Commissioner's determination that the claimant is not disabled if the

3    Secretary applied the proper legal standards, and if the Commissioner's findings are supported by

4    substantial evidence.  *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th

5    Cir. 1987).

6                                                    **REVIEW**

7            In order to qualify for benefits, a claimant must establish that he is unable to engage in

8    substantial gainful activity due to a medically determinable physical or mental impairment which

9    has lasted or can be expected to last for a continuous period of not less than twelve months.  42

10   U.S.C. § 1382c (a)(3)(A).  A claimant must show that he has a physical or mental impairment of

11   such severity that he is not only unable to do his previous work, but cannot, considering his age,

12   education, and work experience, engage in any other kind of substantial gainful work which

13   exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

14   The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th

15   Cir. 1990).

16           In an effort to achieve uniformity of decisions, the Commissioner has promulgated

17   regulations which contain, inter alia, a five-step sequential disability evaluation process.  20

18   C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).  Applying this process in this case, the ALJ

19   found that Plaintiff: (1) had not engaged in substantial gainful activity since December 31, 2004;

20   (2) has an impairment or a combination of medically determinable impairments (20 C.F.R. §

21   404-1520(c); yet (3) does not have an impairment or combination of impairments which

22   significantly limits his ability to perform basic work activities, nor does Plaintiff have a severe

23   impairment (20 C.F.R. 404.1521).  Thus, the ALJ found Plaintiff was not disabled.

24           On appeal, Plaintiff asserts the following arguments: (1) the ALJ's step two finding is not

25   supported by substantial evidence and is based upon incorrect legal standards; (2) the ALJ

26   improperly rejected the opinion of Dr. Manzano; (3) the ALJ failed to properly address the

27

28                                                      8

1   disability finding by the VA; (4) the ALJ failed to comply with Social Security Ruling ("SSR")

2   96-6p; (5) the ALJ improperly rejected Plaintiff's testimony and allegations; (6) the ALJ failed to

3   properly address the testimony of the licensed clinical social worker; and (7) the ALJ failed to

4   address lay witness testimony.

5                                          **DISCUSSION**

6        ***Step Two Findings***

7        In an argument laden with a recitation of case law and rules but lacking in analysis,

8   Plaintiff argues "the uncontradicted evidence establishes that Plaintiff does have medical

9   determinable impairments and/or a combination of such impairments which are 'severe'" and

10  thus disabling.  (Doc. 13 at 9-12.)  The Commissioner contends the ALJ's determination that

11  Plaintiff does not have a severe impairment is supported by substantial evidence.  (Doc. 14 at 4-

12  6.)

13       At step two of the sequential evaluation process, the ALJ must conclude whether Plaintiff

14  suffers from a "severe" impairment.  The regulations define a non-severe impairment as one that

15  does not significantly limit the claimant's physical and mental ability to do basic work activities.

16  An impairment is not severe "if the evidence establishes a slight abnormality that has 'no more

17  than a minimal effect on an individual's ability to work.'"  *Smolen v. Chater*, 80 F.3d 1273, 1290

18  (9th Cir. 1996).  To satisfy step two's requirement of a severe impairment, the claimant must

19  prove the existence of a physical or mental impairment by providing medical evidence consisting

20  of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone

21  will not suffice.  20 C.F.R. §§ 404.1508, 416.908.  The effects of all symptoms must be

22  evaluated on the basis of a medically determinable impairment which can be shown to be the

23  cause of the symptoms.  20 C.F.R. §§ 404.1529, 416.929.  An overly stringent application of the

24  severity requirement violates the statute by denying benefits to claimants who do meet the

25  statutory definition of disabled.  *Corrao v. Shalala,* 20 F.3d 943, 949 (9th Cir. 1994).

26       The step two inquiry is a *de minimis* screening device to dispose of groundless or

27

28                                              9

1  frivolous claims. *Bowen v. Yuckert,* 482 U.S. 137, 153-154 (1987).  Further, the ALJ must

2  consider the combined effect of all of the claimant's impairments on his ability to function,

3  without regard to whether each alone was sufficiently severe.  42 U.S.C. § 423(d)(2)(B).  The

4  combined effect "shall be considered throughout the disability determination process. *Id*.  The

5  adjudicator's role at step two is further explained by SSR 85-28:

6          A determination that an impairment(s) is not severe requires a careful evaluation of the
           medical findings which describe the impairment(s) and an informed judgment about its
7          (their) limiting effects on the individual's physical and mental ability(ies) to perform basic
           work activities; thus, an assessment of function is inherent in the medical evaluation
8          process itself. At the second step of sequential evaluation, then, medical evidence alone is
           evaluated in order to assess the effects of the impairment(s) on ability to do basic work
9          activities.

10  SSR 85-28.

11          Here, ALJ Hoffman found Plaintiff was capable of basic work related activities for the

12  following reasons:

13          In reaching the conclusion that the claimant does not have an impairment
           or combination of impairments that significantly limits his ability to perform basic
14         work activities, the undersigned has considered all symptoms and the extent to
           which these symptoms can reasonably be accepted as consistent with the objective
15         medical evidence and other evidence, based on the requirements of 20 CFR
           404.1529and SSRs 96-4p and 96-7p.  The undersigned has also considered
16         opinion and evidence in accordance with the requirements of 20 CFR 404.1527
           and SSRs 96-2p, 96-5p, 96-6p and 06-3p.
17         In considering the claimant's symptoms, the undersigned must follow a
           two-step process in which it must first be determined whether there is an
18         underlying medically determinable physical or mental impairments(s) – i.e., an
           impairment(s) that can be shown by medically acceptable clinical and laboratory
19         diagnostic techniques – that could reasonably be expected to produce the
           claimant's pain or other symptoms.
20         Second, once an underlying physical or mental impairment(s) that could
           reasonably be expected to produce the claimant's pain or other symptoms has
21         been shown, the undersigned must evaluate the intensity, persistence, and limiting
           effects of the claimant's symptoms to determine the extent to which they limit the
22         claimant's ability to do basic work activities.  For this purposes, whenever
           statements about intensity, persistence, or functionally limiting effects of pain or
23         other symptoms are not substantiated by objective medical evidence, the
           undersigned must make a finding on the credibility of the statements based on a
24         consideration of the entire case record.
           In his testimony and written statements, . . . [Plaintiff] has a valid driver's
25         license and he drives 2-3 times a week. . . .  He feels that he cannot return to work
           due to problems of concentration and inability to deal with people, bosses, or
26         supervisors.  He has arthritis here and there in his back and neck for which he
           takes aspirin.  He alleges no problems with sitting or standing.  He gets depressed

27

28                                          10

sometimes and likes to stay by himself.  Other symptoms of a post-traumatic stress disorder include nightmares 2-3 times per week and sometimes more; panic attacks, anger, irritability, anxiety, flashbacks of action in Vietnam.  On activities of daily living, he has been divorced for approximately 3 years.  The claimant advised that he does have a girlfriend with whom he recently went on a cruise.  He lives with his daughter; his daughter is in college. He stated that since retiring, he went back to Vietnam, China and Thailand; that he spent 20 days there with his son. . . . Mr. Delgado advised that he performed household chores including laundry.  He prepared meals and he shops for groceries and other household items. He eats out, visits with family and friends, and he worked out at the gym.  He performs yard work, cares for his pet, watches television, he takes walks in the park, and he reads.  Mr. Delgado reported that he spends most of his time outside. He stated that he does require reminders from time to time from his son as when to shower, mow the lawn, and water the trees, that this is because he cannot remember nor can he follow instructions.  He can pay attention for two minutes.

AR 20-21.

Plainly, ALJ Hoffman carefully evaluated the medical findings offered for Plaintiff's mental impairment and assessed Plaintiff's ability to perform basic work activities.  "Basic work activities" include physical functions, such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; as well as mental capacities such as understanding, carrying out, and remembering simple instructions; using judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting. *See* 20 C.F.R. § 404.1521(b).  The medical record establishes that Plaintiff's mental impairments are slight abnormalities that would have no more than a minimal effect on his ability to work. *Smolen v. Chater*, 80 F.3d at 1290.  Therefore, the ALJ's findings are supported by substantial evidence and are free of legal error.

### Consideration of Medical Opinion

Plaintiff contends that ALJ Hoffman committed reversible error because he failed to provide any reason or reasons for rejecting Dr. Manzano's opinions.  Further, Plaintiff contends that if the doctor's opinions were properly considered, Plaintiff should be found to be disabled. (Doc. 13 at 12-14.)  The Commissioner contends no error occurred because the ALJ did not reject the doctor's opinion.  Rather, the ALJ considered the findings and conclusions of Dr.

1  Manzano and interpreted those findings within the proper framework, as well as the record as a

2  whole.  (Doc. 14 at 6.)

3      Cases in the Ninth Circuit distinguish among the opinions of three types of physicians:

4  (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the

5  claimant (examining physicians); and (3) those who neither examine nor treat the claimant

6  (nonexamining physicians).  As a general rule, more weight should be given to the opinion of a

7  treating source than to the opinion of doctors who do not treat the claimant.  *Winans v. Bowen*,

8  853 F.2d 643, 647 (9th Cir. 1987).  At least where the treating doctor's opinion is not

9  contradicted by another doctor, it may be rejected only for "clear and convincing" reasons.

10 *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991).  Even if the treating doctor's opinion is

11 contradicted by another doctor, the Commissioner may not reject this opinion without providing

12 "specific and legitimate reasons" supported by substantial evidence in the record for so doing.

13 *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).

14     The opinion of an examining physician is, in turn, entitled to greater weight than the

15 opinion of a nonexamining physician.  *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990);

16 *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir. 1984).  As is the case with the opinion of a treating

17 physician, the Commissioner must provide "clear and convincing" reasons for rejecting the

18 uncontradicted opinion of an examining physician.  *Pitzer*, 908 F.2d at 506.  And like the opinion

19 of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor,

20 can only be rejected for specific and legitimate reasons that are supported by substantial evidence

21 in the record.  *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).

22     The opinion of a nonexamining physician cannot, by itself, constitute substantial evidence

23 that justifies the rejection of the opinion of either an examining physician or a treating physician.

24 *Pitzer*, 908 F.2d at 506 n.4; *Gallant*, 753 F.2d at 1456.  In some cases, however, the ALJ can

25 reject the opinion of a treating or examining physician, based in part on the testimony of a

26 nonexamining medical advisor.  *E.g., Magallanes v. Bowen,* 881 F.2d 747, 751-55 (9th Cir.

27

28                                          12

1  1989); *Andrews*, 53 F.3d at 1043; *Roberts v. Shalala*, 66 F.3d 179 (9th Cir. 1995).  For example,

2  in *Magallanes*, the Ninth Circuit explained that in rejecting the opinion of a treating physician,

3  "the ALJ did not rely on [the nonexamining physician's] testimony alone to reject the opinions of

4  Magallanes's treating physicians . . .."  *Magallanes*, 881 F.2d at 752.  Rather, there was an

5  abundance of evidence that supported the ALJ's decision: the ALJ also relied on laboratory test

6  results, on contrary reports from examining physicians, and on testimony from the claimant that

7  conflicted with her treating physician's opinion.  *Id*. at 751-52.

8        ALJ Hoffman considered Dr. Manzano's opinion as follows:

9          Dr. N. Manzano, a treating source at the Veterans Administration
   estimates the claimant's post-traumatic stress disorder is chronic secondary to loss
10  of job and memories of losses in Vietnam.  He opined that despite this condition,
   the claimant retains the ability to understand, remember, and carry out an
11  extensive variety of technical, complex, and simple 1 - 2 step job instruction and
   notes that the claimant is not open to change.  He can deal with the public but has
12  difficulty relating socially in discussions pertaining to war.  He can maintain
   concentration and attention for at least two hour increments except during times of
13  stress.  Overall, the claimant's ability to make occupational, performance, and
   personal/social adjustments are fair to poor.

14

15  AR 21, internal citations omitted.

16        The Court is persuaded by the Commissioner's position.  ALJ Hoffman did not provide

17  specific and legitimate reasons for rejecting Dr. Manzano's opinion because he did not in fact

18  reject it.  Rather, he incorporated the doctor's opinion into his own assessment.  This is

19  evidenced at page 23 of the administrative record wherein the ALJ identifies the fact Plaintiff is

20  only mildly limited in the activities of daily living, social functioning, and concentration,

21  persistence and pace.  Dr. Manzano's opinion indicates that Plaintiff is able to understand,

22  remember and carry out complex, detailed and simple job instructions.  AR 442.  Of eight items

23  listed under "Making Occupational Adjustments," the doctor categorized Plaintiff's ability to

24  relate to co-workers and ability to deal with work stress as *both* fair and poor.  AR 441.  He

25  believed Plaintiff's ability to interact with supervisors was poor.  AR 441.  Dr. Manzano did not

26  identify any "other work-related activities which are affected by the impairment."  AR 442.

27

28

1   Under the category of "Making Personal/Social Adjustments," Plaintiff's ability to relate

2   predictably in social situations was identified as *both* fair and poor; all other abilities in this

3   category were identified as good or fair.  AR 442.  A review of the evaluation found at page 444

4   of the administrative record support the ALJ's findings; while Plaintiff may have some limitation

5   ("can do except . . ." "some difficulty") those limitations were properly considered mild ("can

6   do" "good").

7        Despite Plaintiff's strenuous argument to the contrary, no error occurred.  The ALJ's

8   determination is supported by substantial evidence and is free of legal error.

9                    ***Consideration of Veterans Administration Findings***

10       Plaintiff contends the ALJ failed to properly address the VA disability finding because

11   "he gave no reasons for rejecting it."  (Doc. 13 at 14-15.)  In reply, the Commissioner contends

12   the ALJ properly considered the VA rating and correctly concluded Plaintiff's mental impairment

13   was not severe.  (Doc. 14 at 6-7.)

14       A VA disability rating does not compel the Social Security Administration to reach an

15   identical result.  *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002).  However, the

16   ALJ must consider the VA's findings in reaching a decision.  *Id.*  In fact, an ALJ "must ordinarily

17   give great weight to a VA determination of disability" because of the similarities of the two

18   federal programs.  *Id.*  The ALJ may give less weight to a VA disability rating if he "gives

19   persuasive, specific, valid reasons for doing so that are supported by the record."  *Id.*

20       Here, ALJ Hoffman found, in pertinent part, as follows:

21          The medical evidence documents and supports a 100% disability rating
        and awarded from the Veterans Administration (VA) effective February of 2005
22      secondary to post traumatic stress disorder, relevant to his military traumas.  As a
        result of his award, recommended treatment included therapeutic services
23      including weekly individual sessions, group therapy and crisis visits as needed.
        The claimant's treatment is provided through the VA.  Predating the alleged onset
24      date, treatment records reflect treatment for anxiety and levels of depression that
        improved with medication.  As of the alleged onset date of disability, treatment
25      and routine follow-ups have focused on allegations of continued symptoms of
        PTSD events and stressors on day to day living that included problems with
26      demanding supervisors secondary to reorganization of the company, finance[s],
        marital problems, and subsequently, adjusting to retirement.  Since that time, his

27

28                                                    14

1

*counseling has been on and off as symptoms increase/decrease for support and medication management which appears to have helped.  Progress notes through April of 2007 indicate that symptoms regarding his PTSD were stable and he was compliant with low dose medication.  Mental status examination reflected only a mildly restricted affect.  The claimant was functionally independent.*  Mr. Delgado also has a history of alcohol abuse but no history of legal problems.

2

3

4

5   AR 21, emphasis added & internal citations omitted.  Clearly, ALJ Hoffman considered the VA

6   disability rating. *McCartey v. Massanari*, 298 F.3d at 1076.  Moreover, he gave persuasive,

7   specific, valid reasons for doing affording the rating less weight and those reasons are plainly

8   supported by this record. *Id.*  Those reasons include medical records that support a finding of

9   only mild limitation, stability and functional independence.

10       In sum, ALJ Hoffman's findings are not erroneous and are supported by substantial

11  evidence.

12  ***Compliance with SSR 96-6p***

13       Plaintiff complains that state agency physician Garcia opined that Plaintiff had a severe

14  mental impairment, and thus, the ALJ erred as his findings are contrary to Dr. Garcia's opinion.

15  (Doc. 13 at 15-16.)  The Commissioner responds that in fact Dr. Garcia specifically found that

16  Plaintiff did not suffer from a severe mental impairment, and therefore, the ALJ's findings are

17  proper.  (Doc. 14 at 7.)

18                          **Opinion of State Agency Physician**

19       Psychiatrist Archimedes Garcia, M.D., completed a Mental Residual Functional Capacity

20  Assessment on June 27, 2005, wherein he concluded Plaintiff was not significantly limited in

21  eighteen of the twenty categories considered.  Dr. Garcia found Plaintiff to be moderately limited

22  in only two areas: the ability to understand and remember detailed instructions, and the ability to

23  carry out detailed instructions.  AR 219-221.  Dr. Garcia's functional capacity assessment

24  specifically states as follows: "capable SRT with adequate pace and persistence; able to adapt;

25  able to relate."  AR 221.  In a Consultation Request of the same date, Dr. Garcia concluded that

26

27

28                                                   15

Plaintiff's "MSE are basically intact.  ADLs reduced but I think functioning [is] at the SRT level."  AR 224.

A Psychiatric Review Technique also dated June 27, 2005, with regard to consideration of an affective disorder, opines that Plaintiff's medically determinable impairments of depression and PTSD do not satisfy the diagnostic criteria for a listing impairment.  AR 228.  The Paragraph B criteria were considered as well, and Dr. Garcia found Plaintiff to be mildly limited as to difficulties in maintaining social functioning, and mild and less than moderately limited with regard to the restriction of activities of daily living and difficulties in maintaining concentration, persistence or pace.  AR 235.

### ALJ Hoffman's Findings re State Agency Opinion

The ALJ's findings reflect the following:

> As for the opinion evidence, Social Security ruling 96-6p requires the opinions of state agency medical and psychological consultants be treated as expert opinion evidence from nonexamining sources.  The undersigned is not bound by the conclusions of these nonexamining sources, but has considered their opinions and given them appropriate weight in rendering this decision.  These medical experts have indicated that the claimant has the necessary mental and physical residual functional capacity to perform work.

AR 22.

### Analysis

Plaintiff contends the ALJ statement is erroneous because it does not comply with SSR 96-6p "or accurately describe Dr. Garcia's [] opinion," nor does it consider his "age, education, and residual functional capacity . . .."  (Doc. 13 at 16.)

ALJ Hoffman complied with SSR 96-6p by considering the opinions of both Dr. Garcia and Dr. Barnett;[4] he did not ignore these expert opinions.  Further, he explained the weight given as "appropriate" and went on to indicate both found Plaintiff capable of performing work.

---

[4]Dr. Barnett concluded that Plaintiff "would be able to understand and remember simple or complex work-related instructions and tasks" and could sustain focus, attention and concentration to complete routine work-related tasks in a timely and appropriate fashion.  He could interact with coworkers, supervisors and the public, and would have no difficulty adapting to change, hazards or stressors in the work environment.  AR 324.

1    Title 20 of the Code of Federal Regulations section 404.1520(c) provides as follows:

2         You must have a severe impairment. If you do not have any impairment or
3    combination of impairments which significantly limits your physical or mental
     ability to do basic work activities, we will find that you do not have a severe
4    impairment and are, therefore, not disabled. *We will not consider your age,
     education, and work experience.* However, it is possible for you to have a period
5    of disability for a time in the past even though you do not now have a severe
     impairment.

6    Emphasis added.  Because all medical evidence indicates that Plaintiff's mental impairment is

7    non-severe, the ALJ was not required to consider Plaintiff's age, education or work experience.

8         In conclusion, ALJ Hoffman did not err with regard to his consideration of the state

9    agency physician's opinion.

10   ***Plaintiff's Testimony and Credibility***

11        Next, Plaintiff complains the ALJ failed to properly assess his credibility.  (Doc. 13 at 16-

12   20.)  The Commissioner asserts that the ALJ provided sound reasons to discredit Plaintiff's

13   subjective complaints.  (Doc. 14 at 7-9.)

14        A two step analysis applies at the administrative level when considering a claimant's

15   credibility.  *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir.1996).  First, the claimant must

16   produce objective medical evidence of an impairment that could reasonably be expected to

17   produce some degree of the symptom or pain alleged.  *Id.* at 1281-1282.  If the claimant satisfies

18   the first step and there is no evidence of malingering, the ALJ may reject the claimant's

19   testimony regarding the severity of his symptoms only if he makes specific findings that include

20   clear and convincing reasons for doing so.  *Id.* at 1281.  The ALJ must "state which testimony is

21   not credible and what evidence suggests the complaints are not credible."  *Mersman v. Halter*,

22   161 F.Supp.2d 1078, 1086 (N.D. Cal.2001), quotations & citations omitted ("The lack of

23   specific, clear, and convincing reasons why Plaintiff's testimony is not credible renders it

24   impossible for [the] Court to determine whether the ALJ's conclusion is supported by substantial

25   evidence"); Social Security Ruling ("SSR") 96-7p (ALJ's decision "must be sufficiently specific

26

27

28                                              17

1   to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave

2   to the individual's statements and reasons for that weight").

3        An ALJ can consider many factors when assessing the claimant's credibility.  *See Light v.*

4   *Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir.1997).  The ALJ can consider the claimant's

5   reputation for truthfulness, prior inconsistent statements concerning his symptoms, other

6   testimony by the claimant that appears less than candid, unexplained or inadequately explained

7   failure to seek treatment, failure to follow a prescribed course of treatment, claimant's daily

8   activities, claimant's work record, or the observations of treating and examining physicians.

9   *Smolen*, 80 F.3d at 1284; *Orn v. Astrue*, 495 F.3d 625, 638 (2007).

10                          **ALJ Hoffman's Relevant Findings**

11        ALJ Hoffman found as follows with regard to Plaintiff's credibility and symptoms:

12        After considering the evidence of record, the undersigned finds that the
          claimant's medically determinable impairments could have been reasonably
13        expected to produce the alleged symptoms; however, the claimant's statements
          concerning the intensity, persistence and limiting effects of these symptoms are
14        not credible and not consistent with the findings that reflect that the claimant has
          no severe impairment or combination of impairments for the reasons explained
15        below.
          In terms of the claimant's alleged impairments, there is no evidence of a
16        condition characterized by a disturbance of mood accompanied by a full or partial
          manic or depressive syndrome as described in 12.04; or generalized persistent
17        anxiety accompanied by three out of four of the criteria listed in 12.06A and
          resulting in marked restriction of activities of daily living; or marked difficulties
18        in social functioning; or marked difficulties in maintaining concentration,
          persistence, or pace; or repeated episodes of decompensation, each of extended
19        duration.
          Mr. Delgado admits to a wide range of activities which is consistent with
20        the evidence overall in that he has no significant physical limitations.  He
          has advised of how his divorce caused him stress but with support therapy and
21        medication he has been able to interact appropriately and get along with others [].
          He has been able to initiate social contacts and by his own admission, he has a
22        girlfriend and [] he enjoys her company.  There is no evidence of inability to
          communicate clearly with others or interact and actively participate in group
23        activities.  Based on his ability to work in the dairy industry for 32 years
          demonstrates a cooperative behavior and a degree of social maturity.  The
24        claimant reported trips to places that he alleges continue to cause him stress; that
          he stayed twenty days.  He went on a cruise and he was able to restore [a]
25        relationship with his son which is inconsistent with the allegations of isolation. He
          goes to the park, he takes walks, and he works out at the gym on a daily basis.  He
26        told Dr. Manzano that he has "buried the hatch"; that there is nothing that can be
          done about the losses, "so we just need to move on."  There is no evidence of

27

28                                          18

altercations, or social isolation, or avoidance of interpersonal relationships.  There is no evidence of inability to maintain sustained concentration, persistence, or pace.  Progress notes indicate that he claimant's alleged symptoms are stable regarding his PTSD.  His treatment consists of low dose bupropion which the claimant takes intermittently.  In conjunction with his missed appointments, the nature of his treatment, the claimant's response to treatment, and his admitted activities of daily living, the undersigned finds that the claimant has the ability to maintain sustained attention and persist at simple tasks and instructions.  The undersigned further finds that he has not had a condition that met the durational requirements of the Act and that his alleged impairments, based on the medical evidence, are not as severe as alleged.

AR 22.

### Analysis

The first step in assessing Plaintiff's subjective complaints is to determine whether Plaintiff's condition could reasonably be expected to produce the pain or other symptoms alleged.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).  Here, ALJ Hoffman found that Plaintiff's medically determinable impairments of PTSD and depression could reasonably be expected to produce the alleged symptoms.  AR 22.  This finding satisfied step one of the credibility analysis.  *Smolen*, 80 F.3d at 1281-1282.

Because the ALJ did not find that Plaintiff was malingering, he was required to provide clear and convincing reasons for rejecting Plaintiff's testimony.  *Smolen*, 80 F.3d at 1283-1284; *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996) (as amended). When there is evidence of an underlying medical impairment, the ALJ may not discredit the claimant's testimony regarding the severity of his symptoms solely because they are unsupported by medical evidence.  *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991); SSR 96-7.  Moreover, it is not sufficient for the ALJ to make general findings; he must state which testimony is not credible and what evidence in the record leads to that conclusion.  *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir.1993); *Bunnell*, 947 F.2d at 345-346.

In this case, the ALJ made numerous credibility findings.  ALJ Hoffman indicated that Plaintiff admitted to a wide range of activities including long distance travel, enjoying social contacts and personal relationships in spite of his claims of isolation, daily activities including

working out at a gym, taking walks and going to the park, the fact that Plaintiff's treatment

involves a low dose medication, and other reasons.  These are all specific reasons to discredit

Plaintiff's testimony and reported symptomology: an ALJ can look to daily living activities as

part of the credibility analysis (*Burch v. Barnhart*, 400 F.3d at 680; *Fair v. Bowen*, 885 F.2d at

603; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d at 600); an ALJ can consider the

claimant's reputation for truthfulness, prior inconsistent statements concerning his symptoms,

other testimony by the claimant that appears less than candid, unexplained or inadequately

explained failure to seek treatment, failure to follow a prescribed course of treatment, claimant's

daily activities, claimant's work record, or the observations of treating and examining physicians

(*Smolen v, Chater*, 80 F.3d at 1284; *Orn v. Astrue*, 495 F.3d at 638).  *See also Warre v. Comm'r*

*of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (impairments that are effectively

controlled with medication are not disabling); *Tidwell v. Apfel*, 161 F.3d 599, 601-602 (9th Cir.

1998) (finding a mild or minor medical condition with all other tests reporting normal provides a

basis for rejecting claimant's testimony of severity of symptoms); *Johnson v. Shalala*, 60 F.3d

1428, 1434 (9th Cir. 1995) (inconsistencies between the record and medical evidence supports a

rejection of a claimant's credibility; no medical treatment or a conservative level of medical

treatment has been found to suggest a lower level of pain and functional limitations); *Bunnell v.*

*Sullivan*, 947 F.2d at 346-47 (factors to evaluate credibility include medication effectiveness,

side effects of medication, and functional restrictions, as well as "ordinary techniques of

credibility evaluation"; treatment and lack of treatment are factors used to evaluate credibility);

*Fair v. Bowen*, 885 F.2d at 603-04 (claiming severe conditions yet receiving minimal,

conservative, or no treatment is a basis to reject claimant's testimony; additionally, failure to

follow prescribed treatment can be considered in determining credibility);  20 C.F.R. § 416.929

(objective medical evidence can be used in determining credibility; inconsistencies in evidence

will support a rejection of credibility); SSR 96-7p (objective medical evidence is a useful

indicator to assist in making a reasonable conclusion about credibility and the ability to function).

1    Lastly, if an ALJ's credibility finding is supported by substantial evidence, the court "may

2    not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir 2002).  There

3    is significant and substantial evidence in support of ALJ Hoffman's findings here.  Thus, this

4    Court cannot engage in second guessing.  Accordingly, the ALJ did not arbitrarily discredit

5    claimant's testimony and the findings are free of legal error.

6        ***Consideration Licensed Clinical Social Worker Opinion***

7        Plaintiff asserts the ALJ did not properly address the evidence of Plaintiff's treating

8    source, Licensed Clinical Social Worker ("LCSW") Gail Penny/Gail Hendershot.  He further

9    asserts the ALJ was "required to 'explain the weight given to these opinions . . . .'" (Doc. 13 at

10   20-23.)  The Commissioner contends the ALJ is not required to discuss all medical records

11   presented, and that the progress notes from the LCSW do not include a functional assessment and

12   were not probative of Plaintiff's ability to perform basic work activities.  (Doc. 14 at 9.)

13       A LCSW is not an "acceptable medical source."  20 C.F.R. §§ 404.15213(a), 416.913(a).

14   Rather, a LCSW is to be considered an "other source" whose opinion the ALJ may give less

15   weight than that of an acceptable medical source.  20 C.F.R. §§ 404.513(d), 416.913(d); *Gomez*

16   *v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996).

17       Here, because Ms. Penny/Hendershot is a LCSW she is not an acceptable medical source,

18   rather she is an "other source."  "[O]ther sources" are reviewed by this Court under the lay

19   witness standard, rather than the physician's standard of review.  However, lay testimony as to a

20   claimant's symptoms is competent evidence that an ALJ must take into account, unless the ALJ

21   expressly determines to disregard such testimony and gives reasons germane to each witness for

22   doing so.  *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) (internal citations omitted).  An ALJ

23   need only give germane reasons for discrediting the testimony of lay witnesses.  *Id.*

24       ALJ Hoffman's decision references the treatment notes of Plaintiff's LCSW.  *See* AR 20

25   ("Exhibit 5F, page 26").  Plaintiff himself testified before ALJ Hoffman that he had undergone

26   "seven, eight years of counseling . . . that' s helped . . . ."  AR 57.  Clearly the ALJ considered

27

28                                                21

1   these records and testimony.  Further, the Court notes that its review of the medical record - the

2   same record reviewed and considered by the ALJ - reveals the progress notes are very

3   conclusory, and fail to offer any information regarding either functional or mental limitations.

4   Rather, the notes merely indicate, for example, that Plaintiff was depressed and/or anxious, or

5   that he participated in group or individual therapy.  *See* AR 242-322.  Therefore, the Court finds

6   that while ALJ Hoffman did not expressly assess what weight he assigned to the LCSW records,

7   the failure to do so in this instance constitutes harmless error.  *Stout v. Commissioner Soc. Sec.*

8   *Admin.*, 454 F.3d 1050, 1054-56 (9th Cir. 2006); *see also Henderson v. Astrue*, 2009 WL 159229

9   (W.D. Wash. Jan. 22, 2009).

10      In light of the foregoing, a remand or reversal on this basis is not warranted.  ALJ

11   Hoffman's findings are supported by substantial evidence and are free of legal error.

12   ***Lay Witness Testimony***

13      Plaintiff finally argues the ALJ erred with regard to Plaintiff's son's statement by

14   "disregard[ing] it with [a] cursory assertion."  Plaintiff argues that in fact his son's statements

15   corroborate his allegations.  (Doc. 13 at 23-24.)  The Commissioner contends the ALJ's

16   reasoning regarding the lay witness statement was germane to the witness, and thus proper.

17   (Doc. 14 at 9-10.)

18      Lay witness testimony as to a claimant's symptoms is competent evidence which the

19   Commissioner must take into account.  *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).  The

20   ALJ may reject such testimony if he does so expressly, in which case "he must give reasons that

21   are germane to each witness."  *Id.*  The ALJ need not discuss lay witness testimony that pertains

22   to whether or not an impairment exists.  *Nguyen v. Chater,* 100 F.3d 1462, 1467 (9th Cir. 1996).

23   These medical diagnoses are beyond the competence of lay witnesses and therefore do not

24   constitute competent evidence.  20 C.F.R. § 404.1513(a).  However, once an impairment has

25   been established by medical evidence, the extent of the diagnosed impairment may be testified to

26

27

28                                                    22

by the lay witnesses.  20 C.F.R. § 404.1513(e); *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir.

1987).

ALJ Hoffman considered the lay testimony in the form of a Function Report - Adult

Third Party completed by Plaintiff's son, Frank L. Delgado:

> Third party statements indicate that the claimant arises early, waters the
> lawn, takes off for drives, and sits in the park.  He does not bother anyone; that he
> just hangs out until dark.  He is reminded from time to time of a need to shower
> and to keep his bills current.  He does not need anyone to accompany him when
> he goes out.  His temper is short and he is not as social as in the past since he quit
> working but he has never been filed.  The Third Party Statement seems much
> more restrictive than claimant's own testimony regarding his usual activities.

AR 21, internal citation omitted.

ALJ Hoffman clearly considered Plaintiff's son's statement, and offered a germane

reason for rejecting it: it did not corroborate Plaintiff's own testimony.  *See Carmickle v.*

*Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir.2008) (germane reasons for rejecting a

lay witness's testimony include inconsistencies between that testimony and the claimant's

presentation to treating physicians or the claimant's activities, and the claimant's failure to

participate in prescribed treatment); *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005)

(noting that "[i]nconsistency with medical evidence" is one "germane" reason for rejecting lay

witness testimony).

For the foregoing reasons, ALJ Hoffman did not err with regard to his consideration of

the lay witness's statement.  Thus, this finding is supported by substantial evidence and is free of

legal error.

**CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.  The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security and against Plaintiff, Frank Delgado.


IT IS SO ORDERED.

**Dated:** __**March 24, 2011**__                        _____**/s/ Gary S. Austin**_____
                                                                    UNITED STATES MAGISTRATE JUDGE